The STATE ex rel. NEY, Pros. Atty., et al.,

v.

DeCOURCY, Appellee, et al.; Ferguson, Aud., et al., Appellants.

[Cite as *State ex rel. Ney v. DeCourcy* (1992), 81 Ohio App.3d 775.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910151, C–910152.

Decided July 15, 1992.

*Lloyd & Weissenberger, John A. Lloyd, Jr.,* and *Jeanette H. Rost,* for appellee Joseph L. DeCourcy, Jr.

*Lee Fisher,* Attorney General, and *Lorraine M. Nestor,* Assistant Attorney General, for appellant Thomas E. Ferguson, Auditor of State.

*Lee Fisher,* Attorney General, and *James C. Sauer,* Assistant Attorney General, for appellant Joanne Limbach, Tax Commissioner of Ohio.

*Fay D. DuPuis,* City Solicitor, *William L. Rottner* and *Dorothy N. Carman,* Assistant City Solicitors, for *amicus curiae,* city of Cincinnati.

*Frost & Jacobs* and *Pierce E. Cunningham,* for third-party defendant Richard W. Grote.

---

*Per Curiam.*

At issue in these appeals is the decision of the trial court in an action for declaratory judgment to determine whether a county auditor has the statutory authority to reduce the value of property on the current tax duplicate after that value has been certified to the county treasurer. The appellee, Joseph DeCourcy, Jr., the former auditor of Hamilton County, asserted that county auditors do have such general authority, and the trial court agreed. We reverse.

## I

It is important at the outset to set forth the rather convoluted procedural history which brings these particular appellants here on this particular issue.

This case was brought by the state of Ohio *ex relatione* the Hamilton County Prosecutor, the Hamilton County Treasurer, and the Hamilton County Auditor. The complaint alleged two separate causes of action. The first cause of action sought declaratory judgment on the legal question whether a county auditor has the statutory authority to reassess and revalue real property on the current tax duplicate after it has been sent to the county treasurer. The second cause of action sought to recover monies for revaluations allegedly made by the former county auditor, DeCourcy, without a proper evidentiary basis. These appeals concern only the first cause of action.

In his answer, DeCourcy counterclaimed for declaratory judgment, asking the court to declare that county auditors do have the statutory authority to change property values on the tax duplicate even after those values have been certified to the county treasurer. For the purposes of his counterclaim, DeCourcy added the state tax commissioner and the state auditor, the appellants here, as counterclaim defendants. DeCourcy's basis for naming these

parties as counterclaim defendants, as stated in his answer, was that they had asserted positions adverse to his in an audit which led to the bringing of the action by the county prosecutor.

The state tax commissioner and the state auditor both filed answers. Significantly, the state tax commissioner as a defense claimed that DeCourcy had failed to set forth any basis under Civ.R. 13 for naming her as a counterclaim defendant, and had failed to state any cause of action against the tax commissioner upon which relief against her could be granted. Similarly, the state auditor in his answer listed as affirmative defenses (1) that the counterclaim failed to state a claim upon which relief could be granted, (2) that the counterclaim failed to allege facts constituting a justiciable controversy against the state auditor, (3) that venue was improper, and (4) that the declaration which DeCourcy sought would not terminate the controversy or remove any uncertainty.

Notwithstanding his position in his answer that there was no justiciable controversy between him and DeCourcy, the state auditor then moved for summary judgment on DeCourcy's counterclaim for declaratory judgment. The state auditor's position was that, as a matter of law, DeCourcy acted beyond the scope of his authority when he changed certain property valuations after the tax certificate had been certified to the county treasurer.

DeCourcy responded by seeking summary judgment on his counterclaim, arguing that the law gave him authority to make the disputed revaluations at the time that he did. The state tax commissioner then filed her motion for summary judgment, taking a position almost identical to that of the state auditor. The county prosecutor did not file a motion for summary judgment but, rather, submitted a "Memorandum on Declaratory Judgment," in which he noted the conflicting authority on the issue and stated that he was reiterating the position he had taken in previous letters to the county auditor.

The trial judge then issued his opinion, in which he granted DeCourcy's motion for summary judgment on his counterclaim for declaratory judgment. Specifically, the trial judge found that under R.C. 5713.01, the county auditor has the authority to review and change property valuations without resort to the board of revision "at any time," including the time after the tax certificate has been sent to the county treasurer. Accordingly, the trial judge denied the state auditor's and the state tax commissioner's motions for summary judgment.

The county prosecutor, who had originally brought the action for declaratory judgment, did not take an appeal from the trial court's ruling. Rather, the state auditor and the state tax commissioner, who had only been brought into the suit as counterclaim defendants by DeCourcy, and who had originally

protested their involvement in the case for lack of a justiciable controversy between them and DeCourcy, both took appeals. The city of Cincinnati, though not choosing to intervene below, has filed an *amicus* brief here.[1]

## II

Both the state auditor and the state tax commissioner assign as error the trial court's granting of DeCourcy's motion for summary judgment and its denial of theirs. The issues presented in both appeals may be distilled to frame the same question: does a county auditor have the legal authority to change real estate values on the tax list and duplicate after the duplicate has been certified to the county treasurer?

The Ohio Supreme Court has never addressed this particular issue, nor has any other appellate court. The trial judge was persuaded that the county auditor was granted broad authority to change property values "at any time" pursuant to a literal interpretation of R.C. 5713.01. In support of his conclusion, the trial judge cited *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877, in which appears the following language:

"R.C. 5713.01 provides that the auditor is the assessor of real estate and shall assess all real estate according to the appropriate statutes and rules. This statute also provides the following:

" ' * * * The auditor shall revalue and assess *at any time* all or any part of the real estate in such county * * *. He may increase or decrease the true value or taxable value of any lot or parcel of real estate in any township, municipal corporation, or other taxing district by an amount which will cause all property on a tax list to be valued as required by law * * *.' (Emphasis added.)

"The auditor is thus free, 'at any time,' to seek a property's correct value. This authority includes the time when his initial value is challenged by a

---

1. The county prosecutor's second cause of action to recover monies remains, apparently, unresolved. The trial judge in his decision commented that he found it "puzzling" that the former county auditor had been sued only in his official capacity so that "it would appear that the county government is suing the county government for money." Observed the trial judge: "Since the money is all government money, one must wonder what the import of the claim for money is." Following the trial court's decision, DeCourcy moved for dismissal or summary judgment on the second cause of action. The docket and journal entries indicate that the only formal opposition to the motion came from the state auditor, who does not appear to have been either a .plaintiff, a defendant, a counterclaim defendant or an intervenor with respect to the second cause of action. According to the docket and journal entries, no action has been taken on DeCourcy's motion.

complaint before the board of revision. When a property's value is challenged, it is reasonable for the auditor to review it and assert a correct value."

The trial judge took from this passage the implication that the Ohio Supreme Court interpreted "at any time," as it appears in R.C. 5713.01, in the strict literal sense, *i.e.*, that there was no time beyond which the county auditor could not unilaterally revise his valuations of property, regardless of whether the tax duplicate had already been certified to the treasurer. We read *R.R.Z. Assoc.*, however, only as broadly as the facts allow. In *R.R.Z. Assoc.* it was the board of revision which changed the property value upon a complaint by the board of education. The county auditor merely supported the board of revision with testimony before the Board of Tax Appeals. It was in this context that the Ohio Supreme Court stated that the county auditor was free "at any time" not to change, but "to seek" and "assert," a property's true value. The Ohio Supreme Court did not state that the county auditor was free to unilaterally change a property's value on the tax list after the list had already been certified to the county treasurer and without resort to the board of revision.

▆ The trial judge found further support for his position in an unreported Board of Tax Appeals decision, *Bridgeton Refrigerated Warehouse, Inc. v. Cuyahoga Bd. of Revision* (Dec. 29, 1989), BTA No. 88–C–825, unreported. In *Bridgeton*, a two-member majority of the board, relying on *R.R.Z. Assoc.*, concluded that a county auditor did have the authority to retroactively raise the valuation of property after the tax list and duplicate had been sent to the county treasurer. The third member of the board dissented. The original *Bridgeton* decision, however, was vacated upon reconsideration. *Bridgeton Refrigerated Warehouse, Inc. v. Cuyahoga Bd. of Revision* (Jan. 26, 1990), BTA No. 88–C–825, unreported. While the trial judge acknowledged this fact, he nonetheless considered the original decision in *Bridgeton* as the board's "considered opinion * * * at one point in time." Once vacated, however, a decision has no precedential value and must be treated as a nullity.

▆ R.C. 5713.01 must be construed *in pari materia* with those statutes which set forth the respective roles of the board of revision, the tax commissioner, and the county treasurer. The parties have discussed this scheme at length in their briefs and therefore it is unnecessary to delineate every aspect of the statutory framework. Upon examination of the statutes, however, it is clear that the legislature intended a system with certain inherent checks and balances, and that such a system would be subverted entirely if, after examination by the tax commissioner and certification to the county treasurer, a county auditor was then free to change property values on the tax duplicate solely on his own and without any notice to other interested parties. Such

broad authority could lead exactly to the types of abuses which are alleged to have occurred in the matter *sub judice.*

Demonstrably the statutes create a system in which, once the tax duplicate has been certified to the county treasurer, a property owner who feels aggrieved must resort to the board of revision upon formal complaint. R.C. Chapter 5715. In other words, the board of revision is the statutorily created entity whose function is to hear taxpayer complaints, and the procedures before the board must be followed. For example, there must be a written application for a decrease in valuation, "verified by oath, showing the facts upon which it is claimed such decrease should be made." R.C. 5715.13. Furthermore, notice of such application is to be given to the property owner, if the complaint was not filed by the owner, and, importantly, to the board of education. R.C. 5715.19(B).

This interpretation is borne out by the statutes in R.C. Chapter 319 which directly address the county auditor's authority to make changes in the tax duplicate. R.C. 319.35 states:

"From time to time the county auditor shall correct all clerical errors which he discovers in the tax lists and duplicates * * *. If the correction is made after a duplicate is delivered to the county treasurer, it shall be made on the margin of such list and duplicate * * *."

The grant of limited authority to correct clerical errors implies a lack of authority to make fundamental changes. Clerical errors are those which are computational in nature and do not involve the exercise of discretion or judgment. *Ins. Co. v. Cappellar* (1883), 38 Ohio St. 560; *Brooks v. Lander* (1905), 14 Ohio C.C. (N.S.) 481, affirmed *sub nom. Brooks v. Spencer* (1906), 74 Ohio St. 428, 78 N.E. 1119. Numerous decisions of the state Attorney General also support the view that, once the tax duplicate has been certified to the treasurer, the auditor has no revisory power but, rather, operates *functus officio,* so that any change in the assessment must be based upon an appeal to the board of revision. See, *e.g.,* 1922 Ohio Atty.Gen.Ops. No. 3375.

We also reject the idea expressed in the trial judge's opinion that the "informal hearing" procedure allegedly employed by the county auditor herein was somehow a beneficent practice which was "more efficient and encourage[d] the quick resolution of disputes by individual taxpayers regarding unjustified taxation." This assumes that the "informal hearing" procedure allegedly employed by the county auditor was a right shared by all taxpayers.

### III

We close by emphasizing the narrow scope of this appeal, in which we decide a purely legal question involving the powers of the county auditor in

the abstract. Our decision does not touch upon the particular allegations of wrongdoing which are contained in the second cause of action still before the trial court and not the subject of this appeal. The judgment of the trial court is reversed and this cause remanded to the trial court for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT, P.J., UTZ and GORMAN, JJ., concur.